FILED

In the

UNITED STATES DISTRICT COURT     2024 SEP 25  PM 3: 13

for the

CENTRAL DISTRICT OF CALIFORNIA     CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES
ASH

350 W 1st Street, Suite 4311 Los Angeles, CA 90012-4565 | (213) 894-1565

| | |
|---|---|
| Adaeze Nwosu<br>1802 Vernon Street,<br>Washington, DC,<br>Suite 508<br>*Plaintiff* | *<br>* |

Fee Paid

|  |  |
|---|---|
| | * |
| | * COMPLAINT |
| v. | * CIVIL ACTION NO: 8:24cv 2083 - JVS-<br>JDEx |
| Atlantic Bridge Corporation | * |
| C/O Peter M Nealon | * |
| 26 Corporate Plaza Dr | * |
| Ste 290 | * |
| Newport Beach, Ca 92660 | * |
| *Defendant 1* | * |
| | * |
| University College Cork, | * |
| c/o Office of Corporate & Legal Affairs – | * |
| Governance | * |
| College Rd, University College, Cork, | * |
| Ireland | * |
| *Defendant 2* | * |
| | * |
| The Republic of Ireland | * |
| c/o Maria Browne, Chief State Solicitor | * |
| Osmond House, Little Ship Street, Dublin, | * |
| D08 V8C5 | * |
| contact@csso.gov.ie | * |
| *Defendant 3* | * |
| | * |

Jury Demand

*     *     *     *     *     *          *     *     *     *     *

# Table of Contents

1.  Complaint - (Tort)....................................................................................................3

2.  Parties.....................................................................................................................3

3.  Case Summary.........................................................................................................4

4.  Jurisdiction & Choice of Law.................................................................................5

    I. The Case Is Not Barred By Statute Of Limitations .............................................6

5.  The Common law Doctrines of Vicarious and Ostensible Liability Holds ..........7

6.  Plaintiff's Affidavit/ Statement of Facts in Support of Complaint ......................7

    II. Violation of Title VI of the Civil Rights Act of 1964...........................................7

    III. Fraudulent Concealment and Aiding and Abetting Fraud and/or Conspiracy to Cover Up by Defendants 2 and 3......................................................................................................12

    IV.  Negligence/ Gross Negligence.........................................................................16

7.  Conclusion and Relief...........................................................................................17

8.  Certification ..........................................................................................................18

1.  **Complaint - (Tort)**

   1.1. Fraud/ Fraudulent Misrepresentation / Negligent Misrepresentation,

   1.2. Unfair and Deceptive Trade Practices,

   1.3. Conspiracy

   1.4. Aiding and Abetting fraud

   1.5. Violation of Title VI of the Civil Rights Act of 1964

2.  **Parties**

*Defendant 1,* the Atlantic Bridge Corporation:

   ("Atlantic Bridge") is the exclusive representative in North America for all the Irish Medical, Dental, Physiotherapy and Pharmacy programs. Atlantic Bridge is an American firm and is funded by the Irish universities. It operates nationwide in the USA and Canada to recruit North American students and students who studied in North America, on behalf of the Universities located in Ireland. The Atlantic Bridge Corporation has had a long enduring relationship with the state of California since 1980s and is registered in the State. The owner, Mr Peter Nealon also resides in the State of California. **Atlantic Bridge Inc., is a North American agent/representative of defendant 2 and 3.**

*Defendant 2,* University College Cork:

   The University College of Cork  "UCC" School of Medicine is one of five schools within the College of Medicine and Health at University College Cork that recruits North American students to participate in its 4 year graduate medical education, with the promise that that they can return to North America and match into the residency programs in the U.S.A and Canada. It fully relies on its agent Atlantic Bridge to market to, and recruit North American into its school, hence the name of the Defendant 1 being the "Atlantic bridge" Ireland in Europe and North America. UCC and other schools in Ireland pay comissions to Atlantic Bridge and has decades of enduring relationships in commerce with defendant 1 in the United States.

*Plaintiff,* Ms Adaeze Nwosu

   Ms Nwosu is a Canadian permanent resident, United States of American college graduate, American taxpayer and homeowner and is a black woman who relied upon the direct

false misrepresentations of defendant 1 and opted to go to the University College Cork in Ireland, and suffered profound racism and discrimination by students and staff, assault by the Director of her medical program in Ireland, to the point where she was forced to quit her four year medical program in 2022, though she would have completed the program in 2024 otherwise. She was the only black female student out of a class of 84 medical students, and was the only student who was forced by the hostile environment in Ireland to quit her medical studies and forego the excess of $250,000.00 she had spent on pursuing a medical education in Ireland, as a result of the fraudulent misrepresentations of the first defendant and the proximate corollaries and torts of the 2nd and 3rd defendants, arising from her enrolment.

*Defendant 3* The Republic of Ireland

The Republic of Ireland owns the University College Cork. It is a state school. The Republic of Ireland runs the Work Relations Commission (WRC), an Irish government agency set to investigate and adjudicate discrimination claims on the basis of race and national origin, etc in an administrative, quasi-judicial manner, and provide damages of up to $15,000. The WRC conspired with the first defendant to ultimately dismiss the plaintiff's claim, lying the claims were barred by the statute of limitations to prevent setting a precedent upon which black victims may rely for restitution.

## 3. Case Summary

Ms Nwosu, who was residing lawfully in the United States at the time of learning about the Atlantic Bridge and completing her application for medical school in the United States in June 2020, and initiated her school fees from her residence in the United States, and from her bank in the United States into the Irish medical School Jurisdiction. The 2nd defendant is a recipient of the aid of funds from the American government, with American students receiving financial aid from the American government to pursue their graduate medical education in Ireland. Ms Nwosu was racially targeted, discriminated against to the point where she was assaulted by the Director of her medical program, obtained evidence of her medical school grades being altered so she could be said to have performed worse than her white peers. The 2nd defendant blocked the release of all video footage of her assault by the Director of the in September 21 2021, and the third's defendant GDPR comission also refused to compel the release of the video footage by the Ultimately, Ms Nwosu was forced to leave Ireland for her safety and forego her program. Although Ms Nwosu's family exhausted all internal complaint remedies with the school and

with the state of Ireland, through its anti discrimination process of the Work Relations Comission, all avenies for justice were blocked as the government of Ireland, conspired with and sought to protect the school, and thus falsely misrepresented that Ms Nwosu was out of time to bring her complaint. Out of 84 students, as the only black female student, she was the only student forced to terminate her program against her will. Other black North American students have experienced similar cover-ups by the Irish government when their schools discriminate against black students. Had Ms Nwosu never relied upon the negligent and intentional misrepresentations, omissions of the Atlantic Bridge concerning the 2nd and third defendants, Ms Nwosu would never have been induced to transact and enrol with the 2nd and third defendants. Hence, Ms Nwosu files this suit.

### 4. Jurisdiction & Choice of Law

The basis of jurisdiction is federal question under 28 USC 1331.as the complaint involves violation of federal statutes. Though there is complete diversity of jurisdiction, wherein under 28 U.S.C. § 1332, this federal court has jurisdiction in all civil actions between citizens of different states and between a citizen of a state and a subject of a foreign state if the amount in controversy exceeds $75,000, federal question takes precedence over diversity jurisdiction.

The court can exercise jurisdiction over defendant 1 because Atlantic Bridge, Inc, is incorporated in the State of California.

This Central District of California can exercise jurisdiction over defendants 2 and 3, a foreign country and its agency under the **Foreign Sovereign Immunities Act**, 28 U.S.C. §§ 1602-1611. In fact this court has held that when "a [soveriegn country] "does business" in the Central District of California, venue is appropriate and the principles of *forum non conveniens* do not counsel otherwise. Altmann v. Republic of Austria, 317 F. 3d 954 - Court of Appeals, 9th Circuit 2002. In that suit , the issue [was] "whether the Foreign Sovereign Immunities Act, 28 U.S.C. §§ 1602-1611, confers jurisdiction in the United States District Court for the Central District of California over the Republic of Austria and the state-owned Austrian Gallery in a suit alleging wrongful appropriation of six Gustav Klimt paintings from their rightful heirs." The Central Distrct of California upheld jurisdiction over the foreign state and its agency under the FSIA, and precedent warrants the same should apply here where defendants 2 and 3 profit from the commercial activity of defendant 1, domiciled in the Central Distrct of California, and is their major, if not only source of marekting, to recruiting and processing the applications of North American students into defendant 3's schools in Ireland.

Furthermore US courts can exercise jurisdiction over the 2nd and 3rd defendants because they directly avail of U.S government federal funding, in the form of financial aid to North American students enroled in their schools, and are thus subject to the laws of the United States.

I.    The Case Is Not Barred By Statute Of Limitations

Notably, this case is not barred by statute of limitations, because Ms Nwosu been seeking avenues for justice with the Irish government since the discriminatory acts against her in September 2021, and subsequently in February 2022, because her attempts to justiciable recourse were obstructed by defendants 2 and. For example, the plaintiff's requests of the assault video footage in 2023, from the state police, the WRC and the school itself, were effectively denied by all the defendants 2 and 3. Finally the plaintiff only but exhausted her administrative remedies in November 15 2023, when the Work Relations Commission of the Republic of Ireland, falsely determined that the plaintiff was out of time, after almost one and a half years after the plaintiff initially filing the complaint with defendant two.

Additionally, with regards to defendant 1, the plaintiff initially filed a complaint in her resident state of Maryland in September 2023, but had to voluntarily dismiss the suit when the other party was non-responsive to the plaintiff's request to transfer of venue to California. A voluntary dismissal of the suit was thus filed, and thus increases the time with which a case may be refiled.

Finally, Ms Nwosu did not realize she had been absolutely defrauded until February 2022, when she obtained smoking gun evidence from Defendant 2, that the school's staff had in fact been altering her grades to her detriment, to make her as  the sole black women, conform to their preconceived racial stereotype that she is dumb. In fact, defendant 2 indefinitely postponed an awards ceremony, where she had received the highest marks in her clinical placement, so she would not be awarded.  Thus, with regards to computation of time for statute of limitations, one must count from the time of reasonable realization of injury. For the plaintiff, she only obtained clear and convincing evidence of her suspicions in February 2022; and counting 3 years from then would be 2025. Additionally, fraud has a statute of limitations of 10 years.

5. **The Common law Doctrines of Vicarious and Ostensible Liability Holds**

5.1. In Latin, 'respondeat superior' translates to "that the master must answer." It is a legal doctrine stating that a principal is legally responsible for the negligence and wrongdoing [torts] done by an agent if the act occurs within the scope of employment/ agency.

5.2. This doctrine applies to this case, wherein defendants 2 and 3 are necessarily liable for the torts and negligent acts committed by defendant 1 in this complaint, while defendant 1 was operating as an agent/representative of defendants 2 and 3, to recruit North American students to defendant's 2 school and defendant's 3 country.

5.3. In the same vein, defendant 3, the Republic of Ireland, is responsible for the torts committed by its agencies and state owned schools, who contravened the laws of the United States of America, while being recipients of its Federal funding, as well as engaging in commercial activity, through its agent, defendant 1, in the State of California.

6. **Plaintiff's Affidavit/ Statement of Facts in Support of Complaint**

II.    Violation of Title VI of the Civil Rights Act of 1964.

6.1. "Title VI, 42 U.S.C. § 2000d et seq., was enacted as part of the landmark Civil Rights Act of 1964. It prohibits discrimination on the basis of race, color, and national origin in programs and activities receiving federal financial assistance." As President John F. Kennedy [who ironically is of Irish origin] said in 1963:

*""Simple justice requires that public funds, to which all taxpayers of all races [colors, and national origins] contribute, not be spent in any fashion which encourages, entrenches, subsidizes or results in racial [color or national origin] discrimination.""*

If a recipient of federal assistance is found to have discriminated and voluntary compliance cannot be achieved, the federal agency providing the assistance should either initiate fund termination proceedings or refer the matter to the Department of Justice for appropriate legal action."

6.2. Both defendants 2 and 3 are recipients of federal funding from the U.S. government as American students enrolled in their programs are able to use American taxpayer dollars, from people like the plaintiff, to subsidize the cost of tuition in defendants 2 and 3 schools.

6.3. As recipients of financial funding from the federal government, defendants 2 and 3 are not just liable to laws and provisions of title VI of the civil rights act, but are properly brought into the jurisdiction of the federal court of the United States, waiving all sovereign immunity, and the laws of the proceeding shall be the federal laws of the United States.

6.4. The plaintiff as numerously reverberated in the above clauses suffered damages as a result of this breach of title VI antidiscrimination laws.

6.5. Fraud, Negligent Misrepresentation, Fraud in the Inducement, and Unfair Business Practices against defendants 1 -3

6.6. Both the Consumers Legal Remedies Act (CLRA) and The California Unfair Practices Act, beginning at Section 17000 of the California Business & Professions Code, prohibits unfair competition and "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising, including 1770(a):

6.7. (2) Misrepresenting the source, sponsorship, approval, or

6.8. certification of goods or services;

6.9. (5) Representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval,status, affiliation, or connection which he or she does not have."

6.10.    The plaintiff alleges the defendants concealed, omitted, and misrepresented information about UCC which misled and deceived her into enrolling in UCC and caused her to suffer material loss. Specifically, the defendants did this by Making multiple representations about University College Cork (UCC) which were factually incorrect:

6.11.    One representation on Atlantic Bridge Corporation's website at the time the plaintiff made the material reliance in 2020 was that "UCC is ranked in the 1.1% of universities in the world." This statement is not backed by any evidence or source to verify the facts. Upon checking another source – US News UCC is ranked No 397 out of 2165 schools making it ranked in the 18% of global universities. This is a significant difference (Exhibit A) from the defendants claim.

6.12.    The 1st defendant continued to make claims about the the 2nd defendant that it knew was false in order to get students to enrol. Elsewhere in its *Atlantic Bridge Medicine Prospectus 2023*, (Exhibit), Atlantic Bridge provides another contradictory, confusing and misleading statement to state as a "key fact" that UCC ranks in the top

2% of universities worldwide, and the plaintiff reasonably relied on such information
being that it was coming from a profession, medicine that was about honor, dignity,
and doing no harm.

6.13.    The defendants lied even about basic facts such as the age of the school to make
the plaintiff and other prospective students believe the school has character, and historic
prestige, which it doesn't have. The defendants claim UCC's medical school is 250+
years old, which is captures in defendant's 1 Prospectus that is linked directly to
defendant's 2 website. This statement is false. On its official website and its prospectus,
UCC itself states the School of Medicine was founded in 1849 see Exhibit C, and if
true, makes the school only 174 years old. The fact that the defendants would lie about
something as basic as age, lends itself to be a fraudulent enterprise run by people who
are morally depraved, and intend to deceive unsuspecting and vulnerable students like
the plaintiff.

6.14.    Atlantic Bridge also claims that the medical degrees "awarded by the Irish
universities are recognized by the licensing authorities in the United States and
Canada." This statement is vague, fraudulent, misleading and <u>fraudulently inducing</u>,
for three key reasons:

6.15.    The defendants made this statement knowing that being able to return to North
practice medicine would be of material importance to North American students like the
plaintiff, who were only seeking an M.D degree abroad, because  schools in the USA
were oversubscribed because of surplus demand. Additionally defendants 1 and 2 fail
to mention and materially omits that UCC would not confer an "M.D" degree which is
a graduate medical degree in the US,  upon its students but would rather confer an
M.B.B.S degree which is an *undergraduate degree*.

6.16.    This was a material omission because most consumers would rely on it to decide,
as the plaintiff did. It was only after Ms Nwosu enrolled and arrived in defendant 3,
and began courses in defendant 2 that she found out that it was the M.B.B.S degree that
would be conferred. Thus, Ms Nwosu was fraudulently induced to enrol in a school she
otherwise would not have had the defendants not materially omitted this fact. Instead
the defendants focused on advertising the medical program as a four year program
<u>equivalent</u> / <u>equal, not similar,</u> to the degree conferred in the USA. It was defendant's
1intention in omitting such a material fact because it knows that its disclosure would
significantly adversely influence one's decision to enrol in defendant 2

6.17.    Additionally, in Spring of 2022, the plaintiff found out that above statements made by the defendants about degree recognition and equivalency to the U.S MD were false because the legislative licensing body for US Medical Schools, the Liaison Committee on Medical Education (LCME) did not recognize or accredit degrees conferred outside of the USA, and has no jurisdiction over the Irish M.B.B.S degree. It was only afterwards, in Spring 2022, after trying to transfer back to medical schools in the USA following her harrowing experience in Ireland , that Ms Nwosu learned about this discrepancy and disparities in licensing and accreditations.

6.18.    Defendant 1 fraudulently misrepresents that Ireland is a friendly society. It makes no mention that the Cork, Ireland is an incredibly racist and hostile city to black people. Thus, in order to successfully influence North American students to commit to enrolling in Ireland, and receive its monetary commissions for its benefit, Atlantic Bridge portrays UCC and Ireland in their website and prospectus, to be a welcoming institution for international students and persons by stating "Students from Ireland and from all over [the] world find [it] easy to settle in and make new friends." The plaintiff avers that this material fact/omission is false: Ireland and UCC are very nationalist and UCC was a hostile and racist institution to Ms Nwosu, a black female.

6.19.    The second and third defendants are incredibly nationalist and conservative, and discriminatory against international students, especially international students of color. For example, it was only until 2022, in its 100+ year history, did UCC permit international students to apply to medical positions that were legislatively restricted to Irish graduates and then EU graduates, before international students.

6.20.    Furthermore, Ms. Nwosu experienced that UCC only first created a position for an international student representative in the student government in 2020, the year she enrolled. Though, she won the election for the position, the Irish student government students, themselves excluded her from meetings and did not allow her to resume office by not deliberately sending her zoom links and giving her an official email, like the rest of the officers to conduct her duties (see Exhibit D).

6.21.    Atlantic Bridge also failed to mention that the UCC medical school practiced race discriminating admissions in their classes, such that the class consisted of majority Caucasian students. Ms Nwosu was the only black female student enrolled in a class of 84 students.

6.22.    The defendants also falsely claimed that there was a North American Students' Careers Support Team to assist with clinical and residency placements for students

desiring to return to the U.S to practice medicine, and Ms Nwosu relied  upon this
falsely advertised statement, assured she would be supported in the 2nd defendant to
meet her goal of returning back to the U.S as a medical intern. Ms Nwosu discovered
that this was false in 2022, when she realized, she would have to find placements
herself. In fact, sometime in Spring 2021, on a zoom call with faculty, Irina
Korotchikova, the then director of the clinical placements in the 2nd defendant, Ms
Nwosu found out there was no such support, and she would have to find here
placements. In fact her email suggestion to implement a proactive careers support to
back up their claims, contributed to retaliation and intentional assault by the
aforementioned defendant's faculty member and the director of the medical program,
Mr John MacSharry in September 2021, because the plaintiff was holding them
accountable to their advertisements and promises, upon which she relied and fully
expected to receive as an enrolled medical student.

6.23.     Unknown to her at the time of enrolling in the 2nd defendant, the defendants
were advertising / making promises they never intended to keep.

6.24.     Despite this misrepresentation of material fact, the 1st defendant continued to
brag and advertise about the medical placements in the U.S of the students who had
enrolled in  the 2nd defendant to fraudulently induce prospective North American
schools:

6.25.     For example, The defendant sent the plaintiff marketing emails to my email box
ireoma@gmail.com on March 11 2022, advertising the placement of graduates from
Irish Medical Schools, into North American residency programs, as though the 2nd
defendant supported the students in doing so (Exhibit). Essentially, the defendants
simply in the  business of fraudulently inducing prospective North American students
into enrolling in their program on the pretence  that they were offering comparable
medical education as to the U.S., meanwhile they were offering a completely different
degree, for which the North American students had to supplement their learning
extensively, and leaving the students to find their way into residency programs with
little to no support, beyond informative talks on what was already publicly available.
The defendants claim that there was a North American Students' Careers Support Team
was false.

6.26.     As a direct result of these fraudulent statements, material omissions, unfair
business practices/advertisements made by the defendants upon which Ms Nwosu
relied, Ms Nwosu enrolled in UCC and suffered immensely. The plaintiff: was

victimized, racially discriminated against, and eventually forced to abandon her
program as a result of harassment, physical assault, and victimization actions against
her by the Director of the Medical Program, teaching Irish doctors/ school faculty,
students, because of her race/color/national origin. Ms Nwosu also lost 250,000.00 as
a consequence. 6. As a result of these actions she endured at the school, and lies by
Atlantic Bridge, the plaintiff suffered irreparable harm, including a diagnosis of a non-
pre-existing mental health issue following the traumas.

6.27.     Ms Nwosu brought some of these discriminatory, human right violations and
false claims, and other omissions aforementioned to Atlantic Bridge in a demand letter
dated in 2022, yet Atlantic Bridge did not respond to any of Ms Nwosu's
correspondence on the matter, nor did they change the misrepresentations, omissions
on their website. Thus, Atlantic Bridge knew their claims were false, misleading and
although informed, persisted in leaving their information as is, and continued to make
such factually incorrect statements to intentionally continue to influence consumers.
Had Ms Nwosu been accurately informed on the truth about UCC, or had the school
been accurately portrayed and advertised in the school, she would not have enrolled at
UCC and not have incurred such losses.

III.     Fraudulent Concealment and Aiding and Abetting Fraud and/or Conspiracy to
Cover Up by Defendants 2 and 3

6.28.     The appellate courts in California hold that "A civil conspiracy is a combination
of two or more persons who, by some concerted action, intend to accomplish some
unlawful objective for the purpose of harming another which results in damage." *Vieux
v. East Bay Reg'l Park Dist.,* 906 F.2d 1330, 1343 (9th Cir.1990) (citation and internal
quotation marks omitted). To prove a civil conspiracy, the plaintiff must show that the
conspiring parties "reached a unity of purpose or a common design and understanding,
or a meeting of the minds in an unlawful arrangement." *Id.* (citation and internal
quotation marks omitted). "To be liable, each participant in the conspiracy need not
know the exact details of the plan, but each participant must at least share the common
objective of the conspiracy." *United Steelworkers of Am. v. Phelps Dodge Corp.,* 865
F.2d 1539, 1541 (9th Cir.1989) (en banc). A defendant's knowledge of and participation
in a conspiracy may be inferred from circumstantial evidence and from evidence of the

defendant's actions. *See United States v. Calabrese,* 825 F.2d 1342, 1348 (9th Cir. 1987)

6.29.    "Conspiracy is not a separate tort, but a form of <u>vicarious liability</u> by which one defendant can be held liable for the acts of another. ... A conspiracy requires evidence 'that each member of the conspiracy acted in concert and came to a mutual understanding to accomplish a common and unlawful plan, and that one or more of them committed an overt act to further it.' <u>Thus, conspiracy provides a remedial measure for affixing liability to all who have 'agreed to a common design to commit a wrong' when damage to the plaintiff results. The defendant in a conspiracy claim must be capable of committing the target tort.</u>" (IIG Wireless, Inc. v. Yi (2018) 22 Cal.App.5th 630, 652 [231 Cal.Rptr.3d 771], internal citations omitted.)

6.30.    "Conspiracy is not a cause of action, but a legal doctrine that imposes liability on persons who, although not actually committing a tort themselves, share with the immediate tortfeasors a common plan or design in its perpetration. **By participation in a civil conspiracy, a co-conspirator effectively adopts as his or her own the torts of other co-conspirators within the ambit of the conspiracy. In this way, a co-conspirator incurs tort liability co-equal with the immediate tortfeasors.**" (Applied Equipment Corp. v. Litton Saudi Arabia Ltd. (1994) 7 Cal.4th 503, 510–511 [28 Cal.Rptr.2d 475, 869 P.2d 454], internal citations omitted.

6.31.    As long as two or more persons agree to perform a wrongful act, the law places civil liability for the resulting damage on all of them, regardless of whether they actually commit the tort themselves. 'The effect of charging ... conspiratorial conduct is to implicate all ... who agree to the plan to commit the wrong as well as those who actually carry it out.' " (Wyatt v. Union Mortgage Co. (1979) 24 Cal.3d 773, 784 [157 Cal.Rptr. 392, 598 P.2d 45], internal citations omitted.)

6.32.    "To support a conspiracy claim, a plaintiff must allege the following elements: '(1) the formation and operation of the conspiracy, (2) wrongful conduct in furtherance of the conspiracy, and (3) damages arising from the wrongful conduct.' " (AREI II Cases (2013) 216 Cal.App.4th 1004, 1022 [157 Cal.Rptr.3d 368].)

6.33.    Around June 2022, after obtaining evidence that the medical faculty of the 2nd defendant had been negatively altering her grades intentionally to make her appear dumb, reduce her class rank and conform to their racial stereotypes that black people are dumb/ less intelligent, the plaintiff filed an action locally with the 3rd defendants

Work Relations Commission (WRC), which administratively handles claims of discrimination based on protected classes such as race, age, color, ethnicity.

6.34.    The complaint included details of the exclusion, the plaintiff had faced by the student government, so she could not participate in meetings; the school's refusal and denial to do anything about reinstating her, following the exclusion that prevented her from serving on a term in 2021; the complaint included the alterations to the plaintiff's grades by faculty, and other acts of discrimination taken by the school.

6.35.    The plaintiff also filed a police report with the 3rd defendant's national police/ Irish garda regarding her 2nd degree assault  by the then Director of the Medical program, Mr John MacSharry, in the presence of the clinical director, Irina Korotchikova, which took place on the second defendant's premises, on September 21 2021, in the Brookfield Health Sciences library of the 2nd defendant's campus and was caught on camera within the premises. The police run by the 3rd defendant, conspired with the school refused to release the footage of the assault. The 3rd defendant's Irish commissioner for General Data Protection Regulation (GDPR) that should have released the plaintiff's footage refused to compel the school to release the footage, though it was the plaintiff's right to access her personal information. The 3rd defendant's legal aid declined to take on the plaintiff's case and issue a subpoena of the video footage and instead told the plaintiff to secure the video evidence first, though she explained to them that she could not owing to the various obstructions of justice. Thus, the 3rd defendant did nothing but merely aid and abet fraud.

6.36.    After 1.5 years of filing her complaint with the WRC, the plaintiff's case  finally proceeded to a hearing in October 2023 and the WRC adjudicator submitted its finding dismissing the plaintiff's claim on November 15 2023, on the false grounds that she was  out of time: the particulars of fraud and conspiracy was as follows:

6.37.    On July 8 2022, the 2nd defendant initially submitted a response to the plaintiff's June 2022 WRC discrimination complaint.

6.38.    The plaintiff electronically delivered a copy of the complaint to the 2nd defendant on  June 12 2022. An unsuccessful mediation session was held on December 15th 2023 by the WRC and the matter was then scheduled for a hearing.

6.39.    The WRC scheduled a hearing for July 5 2023. Less than 5 business days before the hearing on July 5rd 2023 on June 30th 2023, the 2nd defendant filed a preliminary document seeking to dismiss the plaintiff's case on the false grounds that she was out of time.

6.40.    Although the submission should not have been accepted by the WRC in the first instance because it was not submitted and served to the opposing party prior to the 15 day deadline, and introduced an element of surprise, the WRC adjudicator, David Caroll permitted the unlawful filing by the defendant. The objective of the 2nd defendant was to dismiss the case without a hearing, and dismiss the matter on a false preliminary technicality, and the 3rd defendant's WRC and conspired with the defendants to achieve just that.

6.41.    On the 5th of July 2023, during the preliminary hearing, the plaintiff insisted that the WRC stick to its rules, otherwise the WRC was already attempting to dismiss the plaintiff's complaint because she did not respond to defendant's 2 surprise and unlawful preliminary matters filing of June 30th 2023. Subsequently, rather than dismiss the complaint, the WRC adjourned the case to October 20 2023 and insisted that the plaintiff respond to the preliminary issues raised by the 2nd defendant alleging that her claims were barred from being heard because they were filed out of time.

6.42.    In the response, the plaintiff showed how her complaints were filed within the 6 months, 12 months timeline from discovery of a breach, including when the plaintiff found out that the 2nd defendant had been altering her grades in February 2022 and subsequently filed a discrimination complaint with the WRC in June 2022, within 4 months.

6.43.    The plaintiff pointed these timely filed complaints in in her written response on August 2023, to the WRC. Yet during the second hearing on October 20, 2023 the same WRC adjudicator, asked Ms Nwosu if she had responded to the preliminary finding, and admitted he did not even read Ms Nwosu's response to the 2nd defendant's preliminary filing. His mind was already made up on conspiring to dismiss her complaint anyway, though he had concealed his material intention of dismiss the plaintiff's complaint anyway based on the illegally filed preliminary matter by the 2nd defendant, and just held a hearing as smoke screen for due process.

6.44.    On November 15 2023, the WRC dismissed the plaintiff's claims as out of time though in his order he cited that they were indeed timely filed. When Ms Nwosu sought to appeal the fraudulent order to the Circuit court (SEE appeal EXHIBIT), she was told she must appear in person in Ireland. Ms Nwosu had left Ireland for her safety in June 2022 following the series of unlawful events and crimes against her that the 2nd defendant committed. Effectively because the 3rd defendant concealed their intention to unlawfully and fraudulently dismiss the plaintiff's complaint, and misrepresent that

they were offering the plaintiff a fair hearing, the WRC blocked Ms Nwosu's recourse
to justice in Ireland.

6.45.     Ms Nwosu suffered because of the fraud and conspiracy to defraud the part of
the defendants. She not only suffered mental anguish as a result of enrolling, she lost
her $250,000 she did not complete her medical degree. Furthermore because of the
difficulty in transferring into other US medical schools because of the erroneous
statement about licensing recognition, Ms Nwosu would have to start medical school
afresh and retake other qualifying exams afresh because her prerequisites and validity
of MCAT exams would have expired. The cost of beginning afresh, would amount to
an excess of $500,000.

## IV.     Negligence/ Gross Negligence

6.46.     California Civil Jury Instructions (CACI) 425 ("Gross negligence is the lack of
any care or an extreme departure from what a reasonably careful person would do in
the same situation to prevent harm to oneself or to others. A person can be grossly
negligent by acting **or by failing to act**."). City of Santa Barbara v. Superior Court
(California Supreme Court, 2007) 41 Cal.4th 747. See also Joshi v. Fitness Internat.
LLC (Cal.App. 2022) 80 Cal. App. 5th 814; People v. Doane (Cal.App., 2021) 66 Cal.
App. 5th 965. Wood v. County of San Joaquin (2003) 111 Cal.App.4th 960; see
also Board of Registered Nursing v. Superior Court, (2021) 59 Cal. App. 5th 1011; see
also People v. Maxwell, (2020) 58 Cal. App. 5th 546. See CACI

6.47.     The plaintiff avers that defendant 1 was negligent in advertising facts about the
2nd and 3rd defendant it knew was not true, so as to fraudulently induce students to enrol
in the 2nd defendant for a commission.

6.48.     The plaintiff avers that defendant 1 was grossly negligent in persisting to list
false claims about the 2nd and 3rd defendant / failing to remove/ failing to correct its
false claims about the 2nd and 3rd defendant, even after the plaintiff had informed their
falsity of the information based on the 2nd defendant's illegal actions, on May 16 2023
and May 23 2023. The defendant 1 declined to respond and kept making false claims
about the defendants such that plaintiff had to sue later in September 2023

6.49.     The plaintiff avers that defendants 2 and 3 were grossly negligent, i.e. acted with
reckless disregard for the impacts their unlawful actions would have on the plaintiff,
including the impact on her mental health, ability to complete her medical education

etc. By failing to address the assault, and then withholding evidence of the assault that occurred on their premises and by their faculty so as to obstruct justice, denying the altering of the plaintiff's grades and refusing to give the plaintiff a refund of her money after deceiving and abusing her, the 2nd and 3rd defendant acted not just grossly negligently but unconscionably in the 21st century.

## 7. **Conclusion and Relief**

7.1. In conclusion, this case concerns the discrimination based on race/color/national origin/ethnicity wielded by defendants 2 and 3, recipients of federal funding of the United States of America, to preclude the plaintiff from completing her medical degree. The plaintiff was the only black female in a class of 84 students and the only student, who at the time in 2022, was forced to abandon her program because of race/color/ethnicity-based discrimination by defendants 2 and 3. The plaintiff, a US graduate was assaulted by faculty of defendant 2, and defendant 3's agencies conspired with defendant 2 to cover up the numerous torts wielded by defendant 2. The plaintiff avers she never would have enrolled in defendant 2 but for defendant's 1 fraudulent misrepresentations of material facts and omissions/concealments concerning defendants 2 and 3. Defendant 1 is a California incorporated corporation, that benefits from the commissions and kickbacks of being the sole North American corporation handle the 2 and 3rd defendants marketing, enrolment assistance into defendant 2 and 3's medical programs.

7.2. Wherefore, as a result of the damages sustained by the plaintiff, and the reluctance of the defendants to cease misleading unsuspecting students, and the conspiracy to cover up the torts committed by the defendants, the plaintiff respectfully requests:

1. Injunctive relief in excess of $250,000 to recoup her expenses on pursuing a degree in Ireland, which she was forced to abandon

2. Punitive treble damages in excess of $300,000,000 million dollars restitutive compensation for the refusal by the defendants to make amends to their torts out of court, but instead conspired to cover up the torts; and to deter other fraudulent schemes from harming vulnerable persons like students from this scam, and to make the point that the United States values its civil rights Act of 1964, for which, in no small part, president Kennedy, an Irish man, lost his life unjustly.

3. A cease and decease order against defendant 1

4. A referral of this case to the Attorney General to be prosecuted not only as a civil matter but as a criminal matter.

5. All other reliefs, which this court finds just.

## 8. Certification

8.1. Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11. I agree to provide the Clerk's Office with any changes to my address where case- related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Respectfully Submitted,

*Adaeze Nwosu*

Adaeze Nwosu
1802 Vernon Street,
Washington, DC, 20009, STE 508
25 September 2024

**Certificate of Service**

I certify that on 25 September 2024, I caused to be served the following complaint on the defendants, and in consistence with Hague Convention International service rules, via registered mail at:

Atlantic Bridge Corporation
C/O Peter M Nealon
26 Corporate Plaza Dr
Ste 290
Newport Beach, Ca 92660
*Defendant 1*

University College Cork,
c/o Office of Corporate & Legal Affairs – Governance
College Rd, University College, Cork, Ireland
*Defendant 2*

The Republic of Ireland
c/o Maria Browne, Chief State Solicitor
Osmond House, Little Ship Street, Dublin, D08 V8C5
contact@csso.gov.ie
*Defendant 3*

Adaeze Nwosu

1802 Vernon Street,

Washington, DC, 20009, STE 508

Ireoma@gmail.com

25 September 2024

**PLD-C-001(3)**

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## CAUSE OF ACTION—Fraud

_____
(number)

ATTACHMENT TO  ☑ Complaint  ☐ Cross-Complaint

(*Use a separate cause of action form for each cause of action.*)

FR- 1. Plaintiff (*name*):  Adaeze Nwosu

    alleges that defendant (*name*):  Defendant 1 - 3

    on or about (*date*):  September 2020      defrauded plaintiff as follows:

FR-2. ☑ **Intentional or Negligent Misrepresentation**
    a. Defendant made representations of material fact    ☑ as stated in Attachment FR-2.a    ☐ as follows:

    b. These representations were in fact false. The truth was  ☑ as stated in Attachment FR-2.b  ☐ as follows:
    see plaintiff's complaint

    c. When defendant made the representations,
        ☑ defendant knew they were false, **or**
        ☐ defendant had no reasonable ground for believing the representations were true.

    d. Defendant made the representations with the intent to defraud and induce plaintiff to act as described in item FIR-5. At the time plaintiff acted, plaintiff did not know the representations were false and believed they were true. Plaintiff acted in justifiable reliance upon the truth of the representations.

FR-3. ☑ **Concealment**
    a. Defendant concealed or suppressed material facts    ☑ as stated in Attachment FR-3.a    ☐ as follows:

    b. Defendant concealed or suppressed material facts
        ☐ defendant was bound to disclose.
        ☑ by telling plaintiff other facts to mislead plaintiff and prevent plaintiff from discovering the concealed or suppressed facts.

    c. Defendant concealed or suppressed these facts with the intent to defraud and induce plaintiff to act as described in item IFIR-5. At the time plaintiff acted, plaintiff was unaware of the concealed or suppressed facts and would not have taken the action if plaintiff had known the facts.

Page _____

Form Approved for Optional Use
Judicial Council of California
PLD-C-001(3) [Rev. January 1, 2007]

**CAUSE OF ACTION—Fraud**

Code of Civil Procedure, § 425.12
www.courtinfo.ca.gov

PLD-C-001(3)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

## CAUSE OF ACTION—Fraud

_____
(number)

FR-4. ☑ **Promise Without Intent to Perform**
    a. Defendant made a promise about a material matter without any intention of performing it ☐ as stated
    in Attachment FR-4.a ☐ as follows:

    b. Defendant's promise without any intention of performance was made with the intent to defraud and induce
    plaintiff to rely upon it and to act as described in item FR-5. At the time plaintiff acted, plaintiff was unaware of
    defendant's intention not to perform the promise. Plaintiff acted in justifiable reliance upon the promise.

FR-5. In justifiable reliance upon defendant's conduct, plaintiff was induced to act ☑ as stated in Attachment FR-5
    ☐ as follows:

FR-6. Because of plaintiff's reliance upon defendant's conduct, plaintiff has been damaged ☑ as stated in
    Attachment FR- 6 ☐ as follows:

FIR - 7. Other:

Page

For your protection and privacy, please

PLD-PI-001(2)

| SHORT TITLE: | CASE NUMBER: |
|---|---|

**CAUSE OF ACTION—General Negligence**    Page _____

_____
(number)

ATTACHMENT TO  [☒] Complaint    [ ] Cross - Complaint

*(Use a separate cause of action form for each cause of action.)*

GN-1. Plaintiff *(name):* Adaeze Nwoke

alleges that defendant *(name):* Defendants 1 -3 : Atlantic Bridge Corporation, University College Cork, The Republic of Ireland

[ ] Does _____ to _____

was the legal (proximate) cause of damages to plaintiff. By the following acts or omissions to act, defendant negligently caused the damage to plaintiff

on *(date):* January 2022 - present & Sept 2020 - present -

at *(place):* California.

*(description of reasons for liability):*

See complaint.

Form Approved for Optional Use
Judicial Council of California
PLD-PI-001(2) [Rev. January 1, 2007]

**CAUSE OF ACTION—General Negligence**

Page 1 of 1

Code of Civil Procedure 425.12
www.courts.ca.gov

For your protection and privacy, please press the Clear This Form button after you have printed the form.    Print this form    Save this form    Clear this form